UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


REX H.,[1]

        Plaintiff,

    v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 3:17-cv-00214-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff, Rex. H., seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c). ECF #5. For the reasons below, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

In July 2015, plaintiff protectively filed for DIB alleging a disability onset date of July 7, 2015. Tr. 19.[2] He requested a hearing after his application was denied initially and on reconsideration. Tr. 76, 90. On July 11, 2016, a hearing was held before Administrative Law Judge ("ALJ") Vadim Mozyrsky, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-64. At the hearing, plaintiff amended his alleged disability onset date to October 2, 2012. Tr. 19. The ALJ issued a decision on August 10, 2016, finding plaintiff not disabled within the meaning of the Act. Tr. 16-26. After the Appeals Council denied his request for review, plaintiff filed a complaint in this court. Tr. 1-4. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. §§ 404.981, 422.210.

## BACKGROUND

Born in 1955, plaintiff was 60 years old on the alleged disability onset date, and 61 years old at the time of his administrative hearing. Tr. 146. He completed one year of college. Tr. 168. He had past relevant work experience as a webpage designer. Tr. 26, 169. Plaintiff alleged disability due to depression, bipolar disorder, high blood pressure, degenerative disc disease, bilateral "shoulder problems," and Lyme disease. Tr. 167.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed on August 22, 2017 (ECF #12).

that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in Social Security Administration ("Agency") regulations, 20 C.F.R. § 404.1520, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision, Tr. 20-21.

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 2, 2012, the alleged onset date of disability. Tr. 21.

At step two, the ALJ determined that plaintiff had the following severe impairments: obesity, degenerative disc disease, hypertension, and bilateral shoulder cuff pathology. *Id.* The

ALJ further found plaintiff's sleep apnea, depression, and anxiety were non-severe medically determinable impairments. *Id.*

At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment. Tr. 22.

The ALJ then found plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 hours out of an 8-hour day, stand and walk 6 hours total out of an 8-hour day. He can push and pull as much as he can lift and carry. He is limited to occasional overhead reaching. He can never work at unprotected heights, around moving mechanical parts, or operate a motor vehicle.

Tr. 22.

The ALJ determined at step four that plaintiff was capable of performing his past relevant work as a web designer. Tr. 26. Accordingly, the ALJ determined that plaintiff was not disabled at any time through the date of his decision. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to give clear and convincing reasons for discrediting his symptom testimony; (2) failing to find his mental health impairments severe at step two; and (3) failing to provide germane reasons for rejecting the opinion of Patricia Goldstein, QMHP.

### I. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by finding his symptom allegations less than fully credible.

### A. Relevant Law

When a claimant has medically-documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). The Administration's new ruling, applicable here, clarifies that "adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." Social Security Ruling ("SSR") 16-3p, *available at* 2016 WL 1119029, at *10. Rather, an ALJ must "consider [a claimant]'s statements about the intensity, persistence, and limiting effects of symptoms, and [] evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *6.

### B. Background Facts

Plaintiff testified that he stopped working sometime in 2011 because he and his wife were acting as caretakers for their terminally ill parents. Tr. 39. He became very upset and "lost all drive" after his mother passed away in July 2012. *Id.* He had difficulty focusing and usually

5 – OPINION AND ORDER

stayed in bed until 1:00 or 2:00 pm. Tr. 40. He took Depakote for nine years and found it helpful in preventing his bipolar swings. Tr. 41. Three weeks before the hearing, plaintiff began taking a new antidepressant because his old medication, Citalopram, was not helping. Tr. 42. He also took Lorazepam at night because he had panic attacks when he put his CPAP mask on. *Id.* His depression caused him to withdraw and procrastinate. Tr. 44. He forgot shopping items without a list. *Id.* He could shop alone to get "something quick" for his wife, but preferred to go to the store with her instead, which they did a "couple of times a week." *Id.* Plaintiff did not clean his home because his wife did. Tr. 45. Although he believed he was capable of preparing his own meals, he did not do so because his wife cooked for him. *Id.*

Plaintiff further testified about his bilateral rotator cuff damage. Tr. 46. He explained that his physician indicated surgery was needed, but he was waiting to obtain an MRI. Tr. 56. Undergoing an MRI was difficult for plaintiff because of his large size and need for sedation due to claustrophobia. Tr. 46. Plaintiff stated that his doctors were no longer giving him steroid injections in his shoulders, which had been generally helpful in the past. Tr. 57. He could lift 20 pounds occasionally and 10 pounds frequently, but could not do so on a daily basis due to joint irritation and inflammation. Tr. 58-59.

Plaintiff described having lower back pain due to "disc issues"; he could stand for only 20 to 30 minutes at a time before needing to lean on something. Tr. 47. He could walk approximately eight blocks before needing to stop for rest and could sit for only 30 minutes at a time. *Id.* He had been experiencing partial left-hand numbness and occasionally experienced tremors when using his left hand, which caused him to drop things. Tr. 48-49, 59-60. He took Norco for pain. Tr. 50-51.

Plaintiff related that he used to be an avid hunter and fisherman, but no longer had any hobbies and had not gone fishing since 2012 because he had a fear of water following a fishing boat accident. Tr. 49. He claimed he could no longer work as a web designer because he had difficulty being creative and had problems integrating "newer features." Tr. 50. When questioned by the ALJ about a November 2015 medical record that stated he was working 20 hours per week, plaintiff surmised it was an old medical note that inadvertently had been carried forward. Tr. 54. A chart note from January 2015 reads that plaintiff told his primary care physician he worked from home on his computer and was concerned his mid-day naps were negatively affecting his work production. Tr. 54-56, 455. At the hearing, plaintiff claimed that he was not actually working at that time, but had not been honest with his doctor because he was too embarrassed and proud to tell him the truth. Tr 55. Plaintiff, however, admitted he "was looking for work at that time." Tr. 56.

### C. Mental Health Impairments

The ALJ concluded that plaintiff's impairments relating to depression and anxiety were inconsistent with his "minimal and sporadic treatment." Tr. 23. "[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . . can cast doubt on the sincerity of [a] claimant's [symptom] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted that plaintiff failed to follow through on a neuropsychological evaluation referred by Dr. Ellen Andrae in October 2012, and did not see a psychologist until May 2015. Tr. 24, 280, 432. In fact, the ALJ noted, that there was "no evidence" that plaintiff sought any mental health treatment for two and a half years between October 2012 and May 2015. Tr. 24. Moreover, psychologist Dr. Jeri Turgesen referred plaintiff to Yamhill County Health and

Human Services for therapy and medication evaluation in May 2015, but as the ALJ noted, plaintiff "did not return to see Dr. Turgesen or any other mental health treatment provider until March 2016, almost a year later." Tr. 24; *see also* Tr. 475-77, 787-88.

The ALJ also found plaintiff's alleged memory loss was contradicted by the objective medical evidence. Specifically, the ALJ found that although plaintiff "was assessed with memory loss associated with severe depression [in October 2012], [] there [w]as no evidence of memory deficits on mental status exam and no formal testing was done." Tr. 24 (citing Tr. 273-85).

The ALJ further noted that during a medical appointment on June 8, 2016—approximately one month before his hearing—plaintiff denied experiencing any paranoia or hallucinations, except for one past incident where he saw inanimate objects moving when he was working long hours in a high stress career. Tr. 24, 861. However, "[o]ne week later, [plaintiff] reported paranoid thoughts and auditory hallucinations." Tr. 24, 850. Plaintiff does not address these seemingly inconsistent statements.

Plaintiff argues the ALJ overlooked that, during the relevant time frame, he was prescribed psychotropic medications by his primary care physician, Dr. Randall Blome. To the contrary, the ALJ expressly considered the fact that plaintiff was prescribed psychotropic medications for many years. Tr. 23. However, the ALJ found plaintiff's alleged memory loss and assessed "pseudodementia" were contradicted by plaintiff's normal mental status exam. Tr. 24, 280; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (holding an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

### D. Physical Impairments

The ALJ found the evidence supported some limitations in physical functioning but that plaintiff's allegations of debilitating symptoms were not consistent with the treatment record. Tr. 24. Specifically, the ALJ noted that an MRI taken in March 2013 showed a full-thickness tear of the anterior supraspinatus tendon. Tr. 24, 287. However, although plaintiff was scheduled for arthroscopic surgery the following month, he did not have this surgery, and instead received a cortisone injection. Tr. 24, 426.

Plaintiff argues the ALJ erroneously faulted him for not undergoing shoulder surgery without discussing the reasons why the surgery was not performed. At the hearing, plaintiff asserted that he cannot undergo shoulder surgery until he has obtained an MRI, and that he has been unable to obtain an MRI due to his size, claustrophobia, and need for sedation. Tr. 46, 56. Plaintiff's unsuccessful MRIs in December 2015 and April 2016, however, do not explain why he could not undergo shoulder surgery in April 2013 after he had an MRI in March 2013. Tr. 621, 630. Indeed, surgery had been scheduled for April 20, 2013, based on the results of the MRI that was successfully conducted on March 23, 2013, less than a month earlier. Tr. 287, 426. Ninth Circuit case law "is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also* SSR 16-3p, at *9. Moreover, the ALJ did not completely discredit plaintiff's symptom testimony. Based on the limitations that the ALJ set for lifting, carrying, and reaching in the RFC, it is apparent the ALJ found that plaintiff's testimony regarding his rotator cuff symptoms was credible to the extent supported by the record. Tr. 22.

The ALJ also found plaintiff's reports to his medical providers undermined his allegations that he was unable to work. For example, in January 2015, plaintiff reported to Dr. Blome that he worked from home on his computer and expressed concern that his fatigue and mid-day naps were affecting his work production. Tr. 25, 455. The following month, plaintiff reported to a registered nurse that he had a "desk job." Tr. 25, 565. When he first saw Dr. Turgesen in May 2015, plaintiff "attributed his employment difficulties to legal concerns related to charges of securities violations." Tr. 24, 476. The same month, he informed Dr. Blome that he worked as a web page designer, but was having "serious financial problems" because he was "involved in a business that had legal issues where the owner of the company went to prison." Tr. 25, 471. Plaintiff stated that, while he "was found not guilty of crimes, when people look up his company all the information on this makes people not want to hire him." Tr. 471. He also stated that he had a habit of doing work for people who did not pay him. *Id.* In April 2016, plaintiff reported he had a "lack of clients" due to "online slander." Tr. 24, 858.

The ALJ found that based on plaintiff's "self-report," "his lack of work [wa]s related to legal issues rather than his impairments." Tr. 24. An ALJ may discount a claimant's symptom testimony based on evidence that the claimant is not working for reasons other than disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Moreover, plaintiff's reports that he was working in 2015 and 2016 directly contradict his assertion that he stopped working sometime in 2011 or 2012 due to his disabling symptoms. Tr. 25, 39, 167-68; *see Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (noting that an ALJ may find a claimant is not credible "based on conflicts between his testimony and his own conduct").

Plaintiff argues that although legal issues might have interfered with his ability to work, that does not mean his impairments did not also prevent him from working. However, given

plaintiff's repeated statements to various medical sources that he was unable to work due to legal issues, the ALJ's determination was a reasonable interpretation of the record and is supported by substantial evidence. Tr. 56, 415, 471, 476, 858; *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (variable interpretations of the evidence are insignificant when the ALJ's finding is supported by substantial evidence).

The ALJ further found that plaintiff's treatment records indicated a more active lifestyle than he alleged. Tr. 25. An ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities of daily living or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).

In discussing plaintiff's activities of daily living, the ALJ first noted that in January 2013, plaintiff almost drowned while he and his son tried to retrieve an anchor they had lost the day before while sturgeon fishing. Tr. 25, 418. Plaintiff reported that the boat sank, and he and his son, who were not wearing life jackets, clung to a single floatation cushion for 45 minutes until they were able to reach safety. Tr. 418. The ALJ also noted that in May 2013, plaintiff reported cleaning his koi pond a few weeks earlier. Tr. 25. This was shortly after plaintiff was diagnosed with a torn rotator cuff and scheduled for surgery he ultimately did not undergo. Tr. 427. Finally, the ALJ noted that in March 2016, plaintiff reported increased involvement at church, participating in various volunteer opportunities and a senior group. Tr. 25, 788.

Plaintiff argues the "ALJ erred because he failed to address the limited nature of [his] daily activities and whether such activities were transferable to the work place." Pl.'s Br. 12, ECF #21. In considering daily activities, however, workplace transferability is not the only basis for which an ALJ may find a claimant's symptom testimony less than fully credible. *See Molina*, 674 F.3d at 1112-13. Here, the ALJ permissibly found plaintiff's fishing and koi pond cleaning activities inconsistent with his symptom allegations (Tr. 25), including his assertions that he suffered from persistent and extreme joint and muscle pain, had no motivation, required daily mid-day naps, lived like a "hermit," could sit for only 30 minutes at a time, and could not hold objects for any length of time without dropping them. Tr. 48, 60, 188-95. That is not to say the ALJ's analysis was flawless. Because the ALJ made no finding of workplace transferability with regard to plaintiff's limited church activities, and because those activities are not inconsistent with plaintiff's testimony, the ALJ's reliance on those activities was error. Tr. 40, 192. However, given the other "clear and convincing" reasons the ALJ provided for finding plaintiff's symptom testimony less than credible, that error is harmless. *Burch*, 400 F.3d at 679.

The ALJ further found plaintiff's reports of back pain were not entirely consistent with his treatment record. Tr. 25. Specifically, the ALJ noted that although plaintiff endorsed tenderness to palpation on examination in November 2015, bilateral straight leg tests were negative and he had normal deep tendon reflexes. Tr. 25, 821. The ALJ also observed that "[t]he records contain little evidence concerning [plaintiff's] back" other than treatment with Norco. Tr. 25.

An ALJ may not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements."

12 – OPINION AND ORDER

20 C.F.R. § 404.1529(c)(2). An ALJ may, however, consider medical evidence as a relevant factor in determining the credibility of a claimant's symptom testimony, including medical evidence contradicting the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Thus, the ALJ appropriately considered that medical records contradicted plaintiff's claims of back pain.

Plaintiff asserts for the first time in his reply that his failure to follow his doctors' recommendations was influenced by his mental health impairments. Pl.'s Reply 10, ECF #29. The court is not required to consider arguments raised for the first time in a reply brief. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 n.6 (9th Cir. 2004). In any event, plaintiff's contention is belied by the fact he regularly sought medical treatment (albeit not to the extent plaintiff's doctors found necessary) in spite of his complaints of severe depression and associated psychological issues. *See, e.g.*, Tr. 363, 377, 415-18, 427, 430, 439, 442, 455.

## II.  Step Two

Plaintiff contends the ALJ erroneously found his depression and anxiety not "severe" at step two. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). The claimant bears the burden of establishing he has a severe impairment at step two by providing objective medical evidence. 20 C.F.R. § 404.1512(a). An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. § 404.1520(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). If an ALJ fails to properly identify a severe impairment at step two, but nonetheless considers the erroneously omitted impairment at subsequent steps of the sequential evaluation process, the step two error is harmless. *Lewis*, 498 F.3d at 911.

At step two, the ALJ found plaintiff had no limitation in the functional areas of activities of daily living and social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 22 (citing 20 C.F.R. § 404.1520a). Based on these findings, the ALJ determined plaintiff's mental health impairments were not severe.

The ALJ relied on plaintiff's function report as the sole basis for finding he had no limitation in activities of daily living. Tr. 22, 188-95. Plaintiff's function report does not support this finding. *See* Tr. 188-95. Thus, the ALJ's step two finding was not based on substantial evidence. However, because the ALJ considered plaintiff's psychological impairments at the subsequent steps of the sequential analysis, and gave sufficient reasons for not crediting the alleged limitations, the ALJ's error at step two was harmless. *See* Tr. 22-24; *Lewis*, 498 F.3d at 911.

Plaintiff further contends that the ALJ erred in failing to include any limitations relating to his mental health impairments in the RFC. This assertion unavailing for the same reason; plaintiff points to no limitations arising from his mental impairments that the ALJ did not appropriately reject in evaluating his symptom testimony and medical evidence. *See* Tr. 22-24.

### III. Lay Medical Opinion Evidence

Plaintiff next argues the ALJ improperly rejected the opinion of Patricia Goldstein, QMHP, who treated him in June 2016. While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513. "Other sources" include, but are not limited to, social workers and therapists. SSR 06-03p, *available at* 2006 WL 2329939. To disregard the opinion of an "other" source,

such as Goldstein, the ALJ must provide a reason that is germane to that witness and adequately supported by the record. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citation omitted).

In June 2016, at the request of plaintiff's attorney, Goldstein submitted a questionnaire regarding plaintiff's ability to work. Tr. 868-71. She had been treating plaintiff for two months, "as availability permit[ted]." Tr. 868. Assessing plaintiff's functional limitations was outside the scope of her practice. Tr. 870. Goldstein noted that plaintiff's diagnoses included major depressive disorder and post-traumatic stress disorder. Tr. 868. She described plaintiff's symptoms as "lethargy, worthless, no motivation, no concentration, feels stuck, not interested in anything, over sleeps, decreased eating, [illegible] anger." *Id.* She also reported that plaintiff had recently been experiencing auditory hallucinations. Tr. 869. Goldstein opined that plaintiff would be unable to succeed in the workplace because his symptoms were "too impacting." Tr. 871. Specifically, she opined that plaintiff would need to take unscheduled breaks at work because his energy level and attention were "rather severe," and he would miss two workdays or more in a month because he was unable to make it through an eight-hour day without falling asleep. *Id.*

The ALJ gave Goldstein's opinion "little weight" because "[s]he had treated the claimant for only 2 months and her opinion is not consistent with the longitudinal record, which reflects only minimal and sporadic mental health treatment." Tr. 24. Plaintiff argues the ALJ erred because he did not address the "six regulatory factors" outlined in SSR 06-03p. Pl.'s Reply 8, ECF #29. Plaintiff, however, fails to acknowledge that "[n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p, at

*5. Based on this case-specific approach, the ALJ considered two of the relevant factors endorsed by SSR 06-03p: "How long the source has known and how frequently the source has seen the individual, [and] [h]ow consistent the opinion is with other evidence." *Id.* at *4.

Plaintiff argues the ALJ's reliance on Goldstein's brief treating relationship with plaintiff to discount her questionnaire was erroneous because she had enough experience with him to form an opinion. As the Commissioner notes, however, the record reflects that "plaintiff only met with Ms. Goldstein once, on June 15, 2016, approximately one week prior to the date of Ms. Goldstein's opinion," and less than one month prior to the hearing. Def.'s Br. 7, ECF #2 (citing Tr. 850). An ALJ may properly give less weight to "other source" opinion based on a limited treating relationship. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). Plaintiff also argues the ALJ erroneously found his mental health treatment was minimal and sporadic; however, that argument is unavailing for the reasons already discussed herein. Accordingly, the ALJ gave sufficiently germane reasons for giving Goldstein's opinion little weight. *See* 20 C.F.R. § 404.1527(c)(2)(i)-(ii) & (4).

## ORDER

Based on the foregoing, the Commissioner's decision is AFFIRMED.

DATED September 18, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge